UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| TIMOTHY MOORE, | ) | Civil Action No.: 4:09-cv-2046-RMG-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | |
| | ) | |
| | ) | |
| DENISE DREW, Warden; LT. L. MILLER; | ) | **REPORT AND RECOMMENDATION** |
| CORRECTIONAL OFFICER D. GRIMES; | ) | |
| CORRECTIONAL OFFICER J. BRYANT; | ) | |
| CORRECTIONAL OFFICER T. PHELPS; | ) | |
| all in their official and individual capacities; | ) | |
| FCI BENNETTSVILLE, SC; and UNITED | ) | |
| STATES OF AMERICA, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## I.     INTRODUCTION

Plaintiff, who is proceeding pro se, was at all times relevant to the incidents set forth in his

Amended Complaint, housed at the Federal Correctional Institution located in Bennettsville, South

Carolina (FCI Bennettsville).   Plaintiff asserts a civil rights action pursuant to Bivens v. Six

Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 397, 91 S.Ct. 1999, 29

L.Ed.2d 619 (1971), complaining that Defendants violated his right under the Eighth Amendment

to be free from cruel and unusual punishment.[1]  Plaintiff also asserts a claim under the Federal Tort

Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671 et. seq.

Presently before the Court is Defendants' Motion to Dismiss, or, in  the Alternative, Motion

---

[1]A Bivens claim arises when a federal government official, acting under color of federal
law, violates a individual's rights under the United States Constitution. Bivens v. Six Unknown
Named Agents of the Fed. Bureau of Narcotics, 403 U.S. 388 (1971). The undersigned notes that
case law involving § 1983 claims is applicable in Bivens actions and vice versa. Farmer v.
Brennan, 511 U.S. 825 (1994).

for Summary Judgment (Document # 40). Because he is proceeding pro se, Plaintiff was warned pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to the Motion to Dismiss could result in the dismissal of his claims. Plaintiff has not filed a Response to the Motion. Instead, he filed a Motion for Extension of Time (Document # 50), arguing that he needed to conduct discovery before filing a Response to the Motion. As discussed in more detail below, portions of Plaintiff's Amended Complaint are subject to dismissal pursuant to Rule 12(b)(6), Fed.R.Civ.P., based upon the allegations in the pleadings alone and, thus, discovery is unnecessary to address those issues. However, Defendants rely upon Rule 12(b)(1), Fed.R.Civ.P., for their argument that other of Plaintiff's claims are subject to dismissal for lack of subject matter jurisdiction and they submit matters outside the pleadings as to those claims. Plaintiff should be allowed to conduct limited discovery on the jurisdictional issues raised by Defendants prior to the court issuing a ruling on those claims.

All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d), DSC. Because this Motion is potentially dispositive of Plaintiff's claims, this Report and Recommendation is entered for review by the district judge.

## II.    STANDARD OF REVIEW

### A.    Rule 12(b)(1)

A motion to dismiss under Federal Rule of Civil Procedure 12(b) (1) examines whether the complaint fails to state facts upon which jurisdiction can be founded. It is the plaintiff's burden to prove jurisdiction, and the court is to "regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for

summary judgment." Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir.1991).

**B.     Rule 12(b)(6)**

Defendants file the present Motion in part pursuant to Rule 12(b)(6), Fed.R.Civ.P.  This court is required to liberally construe pro se complaints. Erickson v. Pardus, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007). Such pro se complaints are held to a less stringent standard than those drafted by attorneys, id.; Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir.1978), and a federal district court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case. Hughes v. Rowe, 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980); Cruz v. Beto, 405 U.S. 319, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972). When a federal court is evaluating a pro se complaint, the plaintiff's factual allegations are assumed to be true. Erickson, 551 U.S. at 93 (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-56, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). The mandated liberal construction afforded to pro se pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so; however, a district court may not rewrite a petition to include claims that were never presented, Barnett v. Hargett, 174 F.3d 1128 (10th Cir.1999), construct the plaintiff's legal arguments for him, Small v. Endicott, 998 F.2d 411 (7th Cir.1993), or "conjure up questions never squarely presented" to the court, Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir.1985).

Moreover, the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim cognizable in a federal district court. See Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir.1990); see also Ashcroft v. Iqbal,

---U.S. ----, ----, 129 S.Ct. 1937, 1953, 173 L.Ed.2d 868 (2009) (outlining pleading requirements under Rule 8 of the Federal Rules of Civil Procedure for "all civil actions"). Although the court must liberally construe a pro se complaint, the United States Supreme Court has recently made clear that, under Rule 8 of the Federal Rules of Civil Procedure, a plaintiff in any civil action must do more than make mere conclusory statements to state a claim. See Iqbal, 129 S.Ct. at 1949; Twombly, 550 U.S. at 555. Rather, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face. Iqbal, 129 S.Ct. at 1949; Twombly, 550 U.S. at 570. The reviewing court need only accept as true the complaint's factual allegations, not its legal conclusions. Iqbal, 129 S.Ct. at 1949; Twombly, 550 U.S. at 555.

> Expounding on its decision in Twombly, the United States Supreme Court stated in Iqbal:

> [T]he pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."
> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 555, 556, 557, 570) (citations omitted); see also Bass v. Dupont, 324 F.3d 761, 765 (4th Cir.2003).

## III.    FACTUAL ALLEGATIONS

Plaintiff alleges that on July 6, 2008, at approximately 6:45 p.m., after the evening meal, Plaintiff was called to the Lieutenant's office for a drug urine analysis test. Amended Complaint ¶ 8. Plaintiff was unable to provide a urine specimen without urinating and defecating at the same

-4-

time due to a recently acquired medical problem and sought permission from officers to urinate while sitting on the toilet. Id. at ¶ 9. Plaintiff's request was denied and he was told by Officers D. Grimes, J. Bryant, T. Phelps, and Lt. Miller that he would have to stand while urinating pursuant to a program statement concerning urine collection for a drug test. Id. at ¶¶ 10, 13. Plaintiff was ordered to provide a urine specimen while standing and was told that he would be placed in the Special Housing Unit if he did not. Id. at ¶ 15. Plaintiff complied and defecated on himself. Id. at ¶ 15. All three Officers laughed at Plaintiff and called him "a shitty nigger." Id. at ¶ 16. Plaintiff alleges that he suffered psychological damage and humiliation as a result of Defendants' actions. Id. at ¶¶ 20, 26. He alleges that this was not an isolated event but, rather, a repeated occurrence. Id. at ¶ 27.

## IV.    DISCUSSION

### A.    Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics

#### 1.    Subject Matter Jurisdiction

Plaintiff brings his first cause of action under Bivens. Initially, the court notes that Bivens claims are not actionable against the United Sates, federal agencies, or public officials acting in their official capacities. FDIC v. Meyer, 510 U.S. 471, 475, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994). Suits against federal officials may not be brought under § 1983. District of Columbia v. Carter, 409 U.S. 418, 424-25, 93 S.Ct. 602, 34 L.Ed.2d 613 (1973). Federal courts have power under 28 U.S.C. § 1331 (1994) to award damages occasioned by infringements by federal officials of constitutionally protected interests. Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971); see Radin v. United States, 699 F.2d 681, 684 (4th Cir.1983) ( Bivens recognized an action against federal officers sued in individual capacities, but not

against the United States). Plaintiff's <u>Bivens</u> action cannot lie against the United States nor against the individual defendants in their official capacities. See <u>United States v. Mitchell</u>, 463 U.S. 206, 212, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983) (the United States cannot be sued without its express consent.); <u>Radin v. United States</u>, 699 F.2d 681, 685 (4th Cir.1983); <u>Keene Corp. v. United States</u>, 700 F.2d 836, 845 n. 13 (2d Cir.1983) ( <u>Bivens</u> does not allow for recovery of money damages, or suits in general, against the government itself.). Accordingly, Plaintiff's <u>Bivens</u> claims against Defendants in their official capacities and against the United States should be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), Fed.R.Civ.P.[2]

### 2.     Supervisory Liability

In his Amended Complaint, Plaintiff fails to allege any specific factual allegations against Defendant Drew. He simply identifies her as the Warden of FCI Bennettsville. Amended Complaint ¶ 3. The United States Supreme Court recently addressed the pleading requirements in connection with a claim against an official who is sued because he or she is a supervisor of others who allegedly violated a plaintiff's constitutional rights. See <u>Ashcroft v. Iqbal</u>, --- U.S. ----, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). The Court began by recognizing the long established rule that liability based upon the doctrine of respondeat superior does not lie in a <u>Bivens</u> action. <u>Id.</u> at 1948. "Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." <u>Id.</u> The <u>Iqbal</u> Court clearly held that a supervisor's mere knowledge and acquiescence

---

[2]Sovereign immunity does not bar damage actions against federal officials in their individual capacities for violation of an individual's constitutional rights. <u>Gilbert v. Da Grossa</u>, 756 F.2d 1455, 1459 (citing <u>Davis v. Passman</u>, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846(1979)). Thus, to the extent Defendants are being sued in their individual capacities under <u>Bivens</u>, Plaintiff's claims are not barred by the doctrine of sovereign immunity.

in his or her subordinate's unconstitutional conduct is insufficient to plead a constitutional claim; rather, "each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." Id. at 1949.

As the Iqbal Court observed, because masters do not answer for the torts of their servants in Bivens and § 1983 cases, "the term 'supervisory liability' is a misnomer." Id.  Indeed, the dissent in Iqbal opined that "[l]est there be any mistake, in these words the majority is not narrowing the scope of supervisory liability; it is eliminating Bivens supervisory liability entirely." Id. at 1957 (Souter, J., dissenting).[3]

Plaintiff has failed to allege that Defendant Drew, through her own independent actions, violated Plaintiff's constitutional rights. Accordingly, dismissal of the claims against Defendant Drew is proper.

### 3.    Qualified Immunity

Defendants assert that they are entitled to qualified immunity in their individual capacities.  The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), established the standard which the court is to follow in determining whether the defendant is protected by this immunity. That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow,

---

[3]The court notes that even if the majority in Iqbal did not entirely dispense with the concept of liability of a supervisor in a Bivens case, the instant Complaint fails entirely to plead facts sufficient to go forward on such a theory based on Fourth Circuit precedent. See Carter v. Morris, 164 F.3d 215, 221 (4th Cir.1999); Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir.1994) (outlining the requirements to hold a supervisory liable for constitutional injuries inflicted by their subordinates).

457 U.S. at 818.

In addressing qualified immunity, the United States Supreme Court has previously held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation." Wilson v. Layne, 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999); see also Saucier v. Katz, 533 U.S. 194, 201 (2001); Suarez Corp. Indus. v. McGraw, 202 F.3d 676, 685 (4th Cir.2000). However, recently, the Supreme Court ruled that courts are no longer bound to follow the two-part inquiry for qualified immunity that had been required by Saucier. Pearson v. Callahan , 555 U.S.223, 129 S.Ct. 808, 818 (2009). As the Court noted, "judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Id. at 819. The Pearson Court clarified that Courts may still apply the two-part inquiry from Saucier when that "order of decision-making will best facilitate the fair and efficient disposition of [the] case." Id. at 821.

In Maciariello v. Sumner, 973 F.2d 295 (4th Cir.1992), the Fourth Circuit Court of Appeals further explained the theory of qualified immunity:

> Governmental officials performing discretionary functions are shielded from liability for money damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Moreover, there are two levels at which the immunity shield operates. First, the particular right must be clearly established in the law. Second, the manner in which this right applies to the actions of the official must also be apparent. Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.

Maciariello, 973 F.2d at 298.

Qualified immunity is a privilege that provides "an immunity from suit rather than a mere

-8-

defense to liability." Saucier, 533 U.S. at 200-01. This doctrine "– which shields Government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights – is both a defense to liability and a limited entitlement not to stand trial or face the other burdens of litigation." Iqbal, 129 S.Ct. at 1945-46. For this reason, the Supreme Court instructs courts to resolve "immunity questions at the earliest possible stage in litigation." Hunter v. Bryant, 502 U.S. 224, 227 (1991).

Defendants in the present case advocate the traditional Saucier approach, that is, determining first whether Plaintiff has sufficiently alleged that a constitutional violation has occurred and, if so, whether the constitutional right was clearly established at the time of the alleged violation.

Plaintiff alleges that he was subjected to cruel and unusual punishment when he was forced to defecate on himself because he was not allowed to sit down on the toilet to give a urine sample. He further alleges that he was subjected to cruel and unusual punishment when the officers laughed at him and called him a "shitty nigger."

The Eighth Amendment prohibits punishments which "involve the unnecessary and wanton infliction of pain." Estelle v. Gamble, 429 U.S. 97, 103, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (quoting Gregg v. Georgia, 428 U.S. 153, 173, 96 S.Ct. 2909, 49 L.Ed.2d 859(1976)). Thus, under the Eighth Amendment, sentenced prisoners are entitled to "adequate food, clothing, shelter, sanitation, medical care and personal safety." Wolfish v. Levi, 573 F.2d 118, 125 (2d Cir.1978), overruled on other grounds by Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). See also Farmer v. Brennan, 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). However, the Eighth Amendment "does not mandate comfortable prisons." Rhodes v. Chapman, 452 U.S. 337,349 (1981). Further, "[t]o the extent that such conditions are restrictive and even harsh, they are

part of the penalty that criminal offenders pay for their offenses against society." Id. at 347. See also Shakka v. Smith, 71 F.3d 162, 166 (4th Cir.1995); Lopez v. Robinson, 914 F.2d 486, 490 (4th Cir.1990).

"In order to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements-that 'the deprivation of [a] basic human need was objectively sufficiently serious,' and that 'subjectively the officials act [ed] with a sufficiently culpable state of mind.'" Shakka v. Smith, 71 F.3d at 166 (quoting Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir.1993)). At this stage in the litigation, the court is to determine only whether Plaintiff has sufficiently alleged a claim for cruel and unusual punishment.

At the outset, it is well-established that verbal abuse by prison officials does not rise to the level of a constitutional violation. See, e.g., Siglar v. Hightower, 112 F.3d 191, 193 (5th Cir. 1997)(verbal abuse by a prison guard does not give rise to a cause of action under § 1983); Morrison v. Martin, 755 F.Supp. 683, 687 (E.D.N.C.), aff'd 917 F.2d 1302 (4th Cir. 1990) (subjection of a prisoner to verbal abuse or profanity does not rise to the level of a constitutional violation); Cuoco v. Moritsugu, 222 F.3d 99, 109 (2d Cir. 2000) ("Rudeness and name-calling does not rise to the level of a constitutional violation."); Martin v. Sargent, 780 F.2d 1334, 1338 (8th Cir. 1985) ("Verbal threats are not constitutional violations cognizable under § 1983"); Ellinburg v. Lucas, 518 F.2d 1196 (8th Cir. 1975) (state prisoner could not maintain 1983 action against prison employee who allegedly called him an obscene name); Collins v. Cundy, 603 F.2d 825 (10th Cir. 1979) (prisoner had no §1983 action against sheriff who laughed at him and threatened to hang him). Thus, assuming Plaintiff's allegations that he was ridiculed and called a "shitty nigger" are true, such conduct is disturbing but insufficient to state a claim for cruel and unusual punishment.

-10-

Whether Plaintiff has sufficiently alleged a constitutional violation with respect to his claim of cruel and unusual punishment for not being allowed to sit down while giving a urine sample is not as clear.  Plaintiff's claim appears to be a matter of first impression as the court has been unable to find any case law addressing allegations that requiring an inmate to stand while urinating for a drug test violates the right to be free from cruel and unusual punishment.  Thus, even assuming that Plaintiff has sufficiently alleged a claim for violation of his right to be free from cruel and unusual punishment, given the lack of legal authority on the issue raised, the undersigned cannot conclude that the right was clearly established at the time of the alleged violation.  In determining whether the right allegedly violated was clearly established, the court defines the right "'in light of the specific context of the case, not as a broad general proposition.'" Parrish ex rel. Lee v. Cleveland, 372 F.3d 294, 301-02 (4th Cir.2004) (quoting Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)). "If the right was not clearly established in the specific context of the case-that is, if it was not clear to a reasonable officer that the conduct in which he allegedly engaged was unlawful in the situation he confronted-then the law affords immunity from suit." Id. (citations and internal quotation marks omitted). Further, "Fourth Circuit precedent is one source for determining whether the law was clearly established at the time of the alleged violation." Vathekan v. Prince George's Cnty., 154 F.3d 173, 179 (4th Cir.1998).

As alleged by Plaintiff, he was unable to provide a urine specimen without urinating and defecating at the same time due to a medical problem and sought permission from officers to urinate while sitting on the toilet.  Plaintiff's request was denied and he was told by Officers D. Grimes, J. Bryant, T. Pehlps, and Lt. Miller that he would have to stand while urinating pursuant to a program statement concerning urine collection for a drug test.  Thus, according to the allegations in the

Amended Complaint, the officers believed they were following policy by requiring Plaintiff to remain standing while providing a urine sample.

A right is "clearly established" if a reasonable officer would have known, under the circumstances of the case at hand, that his actions and behavior violated that right. Wilson v. Kittoe, 337 F.3d 392, 402-03 (4th Cir. 2003) ("In determining whether a right was clearly established at the time of the claimed violation, courts in this circuit ordinarily need not look beyond the decisions of the Supreme Court, this court of appeals, and the highest court of the state in which the case arose"). To be clearly established, the right must have been defined "with a high level of particularity." Id. at 403 (citing Edwards v. City of Goldsboro, 178 F.3d 231, 250-51 (4th Cir. 1999)). When the legality of a particular course of action is open to reasonable dispute, then an officer cannot be liable. Wilson, 337 F.3d at 403. Under the doctrine of qualified immunity, "officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." Maciariello v. Sumner, 973 F.2d 295, 298 (4th Cir. 1992); see also Kirby v. City of Elizabeth City, NC, 388 F.3d 440, 450-51 (4th Cir. 2004).  Although the right to be free from cruel and unusual punishment is clearly established, under the specific circumstances alleged here, the court cannot conclude that a reasonable officer would have known that his actions and behavior violated that right.  Specifically, given the lack of legal guidance on this issue, a reasonable officer could not have known that requiring Plaintiff to give a urine sample while standing up, despite Plaintiff's requests, violated Plaintiff's right to be free from cruel and unusual punishment.  Neither the Supreme Court, the Fourth Circuit, nor this Court have so held.  For this reason and because Plaintiff's rights were not violated through Defendants' alleged verbal ridicule and harassment, Defendants are entitled to qualified immunity on Plaintiff's eighth amendment claim.

-12-

### B.     Federal Tort Claims Act

Plaintiff also asserts a claim under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 et. seq. He alleges that Defendants were negligent in their performance of their duty to collect a urine specimen for a drug test because they failed to take into consideration Plaintiff's assertion that, due to a medical problem, he could not urinate without also defecating.   Amended Complaint ¶ 12. Defendants assert that the court lacks subject matter jurisdiction over the FTCA claim pursuant to the discretionary function exception.

#### 1.     Personal Capacity

Personal capacity suits against employees are not cognizable under the FTCA. 28 U.S.C. § 2679(b)(1).  The United States is the only proper defendant under the FTCA. 28 U.S.C. 1346(b)(1). Therefore, to the extent Plaintiff asserts his claim under the FTCA against Defendants Drew, Miller, Grimes, Bryant and Phelps, those claims should be dismissed.

#### 2.     Discretionary Function Exception

The FTCA provides a limited waiver of the Government's sovereign immunity from suit by allowing a plaintiff to recover damages in a civil action for personal injuries caused by the "negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). This waiver of immunity, however, is subject to exceptions. See 28 U.S.C. § 2680 (providing exceptions to the provisions of the Tort Claims Procedure statutes and to § 1346(b)'s waiver of sovereign immunity). The most important of these is the "discretionary function exception." See McMellon v. United States, 387 F.3d 329, 335 (4th Cir.2004) ( en banc ) (describing

-13-

§ 2680(a)'s exception as "the most important"). The discretionary function exception to the Government's waiver of immunity for tort claims provides that the United States is not liable for "[a]ny claim ... based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of the federal agency or an employee of the Government." 28 U.S.C. § 2680(a). The discretionary function exception preserves sovereign immunity even if the Government was negligent, see Blakey v. U.S.S. Iowa, 991 F.2d 148, 152 (4th Cir.1993), and even if the government employee abused his or her discretion. 28 U.S.C. § 2680(a).  If the discretionary function exception applies, then the claim is outside the limited waiver of immunity created by the FTCA and the district court is without subject matter jurisdiction to adjudicate it. See Medina v. United States, 259 F.3d 220, 223-24 (4th Cir.2001) (finding statutory exceptions to the FTCA's waiver of immunity to be jurisdictional).

In United States v. Gaubert, 499 U.S. 315, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991), the Supreme Court articulated a two-part test for determining whether the discretionary function exception applies. First, the "exception covers only acts that are discretionary in nature, acts that 'involv [e] an element of judgment or choice.' " Gaubert, 499 U.S. at 322, 111 S.Ct. 1267 (quoting Berkovitz v. United States, 486 U.S. 531, 536, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988)). If the action is not a matter of choice for the acting employee, the discretionary function exception will not apply. Berkovitz, 486 U.S. at 536, 108 S.Ct. 1954. The exception is not applicable "when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." Id.

Secondly, if the conduct does involve discretionary judgment, the court must then decide " 'whether that judgment is of the kind that the discretionary function exception was designed to

-14-

shield.' " <u>Gaubert</u>, 499 U.S. at 322-23, 111 S.Ct. 1267 (quoting <u>Berkovitz</u>, 486 U.S. at 536, 108 S.Ct. 1954). "Because the purpose of the exception is to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort, when properly construed, the exception protects only governmental actions and decisions based on considerations of public policy." <u>Gaubert</u>, 499 U.S. at 323, 111 S.Ct. 1267 (internal citations and quotation marks omitted).

In support of its argument that Plaintiff's FTCA claim is barred by the discretionary function exception, the Government offers the Declarations of Officers Bryant, Felts, Grimm, and Warden Drew as well as Program Statement 6060.08 as exhibits. The court cannot properly address the arguments raised by the Government without considering these exhibits. Thus, Plaintiff should be allowed to conduct discovery on the jurisdictional issues raised before the court addresses those issues.

## V.    CONCLUSION

For the reasons discussed above, it is recommended that Defendants' Motion to Dismiss, or, in the Alternative, Motion for Summary Judgment  (Document # 40) be granted in part and denied without prejudice and with leave to refile in part. Specifically, it is recommended that (1) the Motion be granted as to Plaintiff's <u>Bivens</u> claim and Plaintiff's FTCA claim against Defendants Drew, Miller, Grimes, Bryant and Phelps, (2) the Motion be denied without prejudice and with leave to refile as to Plaintiff's FTCA claim against the United States, (3) discovery be reopened for a period of 30 days to allow Plaintiff to conduct discovery on the FTCA claim against the United States, and (4) the United States be given the opportunity to refile their Motion to Dismiss, or, in the Alternative, Motion for Summary Judgment, on the FTCA claim within 15 days following the close of discovery.

s/Thomas E. Rogers, III

Thomas E. Rogers, III
United States Magistrate Judge

January 18, 2011
Florence, South Carolina

**The parties are directed to the important information in the attached Notice.**