UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| TIMOTHY MOORE, ) | Civil Action No.: 4:09-cv-2046-RMG-TER |
| ) | |
| Plaintiff, ) | |
| ) | |
| -vs- ) | |
| ) | **REPORT AND RECOMMENDATION** |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

### **I. INTRODUCTION**

Plaintiff, who is proceeding pro se, was at all times relevant to the incidents set forth in his amended complaint, housed at the Federal Correctional Institution located in Bennettsville, South Carolina (FCI Bennettsville). In the amended complaint, Plaintiff asserted a civil rights action pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 397, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), complaining that Defendants violated his right under the Eighth Amendment to be free from cruel and unusual punishment. Plaintiff also asserted a claim under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671 et. seq.

On January 18, 2011, the undersigned recommended that Defendants' motion to dismiss or in the alternative motion for summary judgment be granted in part and denied in part without prejudice with leave to re-file in part. (Doc. #57). On February 9, 2011, United States District Judge, Richard M. Gergel, entered an order granting Defendants' motion to dismiss or in the alternative for summary judgment in part and dismissing all of Plaintiff's claims save his Federal Tort Claims Act (FTCA) cause of action against the United States. Judge Gergel denied the Government's motion without prejudice with leave to re-file after the completion of discovery. Plaintiff was allowed to

conduct discovery within thirty days of said order. The United States was granted leave to re-file its motion fifteen days after the close of discovery. On March 25, 2011, Defendant United States of America re-filed its motion to dismiss, or in the alternative for summary judgment. On March 31, 2011, Plaintiff filed a motion for extension of time to complete discovery. On April 21, 2011, the undersigned issued an order denying the motion for extension of time to complete discovery and advising Plaintiff that he had until May 2, 2011, to file a response to Defendant United State's motion to dismiss or in the alternative summary judgment or his case may be dismissed with prejudice pursuant to Rule 41b of the Federal Rules of Civil Procedure. Plaintiff failed to file a response to the motion but filed a motion to amend the complaint instead.(Doc. # 72).

Presently before the Court is Defendant United States' motion to dismiss, or, in the alternative, motion for summary judgment (Doc. # 67).  Because he is proceeding pro se, Plaintiff was warned pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to the motion to dismiss/summary judgment could result in the dismissal of his claims. (Doc. #68). As previously stated, Plaintiff has not filed a response to said motion.  Instead, he filed a motion to amend his complaint on May 17, 2011. (Doc. # 75).

All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d), DSC.

## II. STANDARD OF REVIEW

As Defendant United States (hereinafter "Defendant") submitted evidence outside the pleadings, this motion is addressed pursuant to Rule 56.

The federal court is charged with liberally construing the complaints filed by pro se litigants,

to allow them to fully develop potentially meritorious cases. See Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972). The court's function, however, is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, Weller v. Dep't of Social Servs., 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists. If none can be shown, the motion should be granted. Fed. R. Civ. P. 56(c).

The moving party bears the burden of showing that summary judgment is proper. Summary judgment is proper if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof. Celotex, 477 U.S. 317. Once the moving party has brought into question whether there is a genuine dispute for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine dispute for trial. Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986). The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Barber v. Hosp. Corp. of Am., 977 F.2d 874-75 (4th Cir.

1992).  The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits."  Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

To show that a genuine dispute of material fact exists, a party may not rest upon the mere allegations or denials of his pleadings.  See Celotex, 477 U.S. at 324 (Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves).  Rather, the party must present evidence supporting his or her position through "depositions, answers to interrogatories, and admissions on file, together with ... affidavits, if any."  Id. at 322; see also Cray Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

### III. FACTUAL ALLEGATIONS

Plaintiff alleges that on July 6, 2008, at approximately 6:45 p.m., after the evening meal, Plaintiff was called to the Lieutenant's office for a drug urine analysis test.  Amended Complaint ¶ 8.  Plaintiff was unable to provide a urine specimen without urinating and defecating at the same time due to a recently acquired medical problem and sought permission from officers to urinate while sitting on the toilet.  Id. at ¶ 9.  Plaintiff's request was denied and he was told by Officers D. Grimes, J. Bryant, T. Phelps, and Lt. Miller that he would have to stand while urinating pursuant to a program statement concerning urine collection for a drug test.  Id. at ¶¶ 10, 13.  Plaintiff was ordered to provide a urine specimen while standing and was told that he would be placed in the Special Housing Unit if he did not.  Id. at ¶ 15.  Plaintiff complied and defecated on himself.  Id. at ¶ 15.  All three Officers laughed at Plaintiff and called him "a shitty nigger."  Id. at ¶ 16.  Plaintiff

alleges that he suffered psychological damage and humiliation as a result of Defendants' actions. Id. at ¶¶ 20, 26. He alleges that this was not an isolated event but, rather, a repeated occurrence. Id. at ¶ 27.

## IV. DISCUSSION

**Federal Tort Claims Act**

Plaintiff asserts a claim under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 et. seq. He alleges that Defendant was negligent in the performance of the BOP's employees' duty to collect a urine specimen for a drug test because they failed to take into consideration Plaintiff's assertion that, due to a medical problem, he could not urinate without also defecating. Amended Complaint ¶ 12. Defendant asserts that the court lacks subject matter jurisdiction over the FTCA claim pursuant to the discretionary function exception.

**Discretionary Function Exception**

The FTCA provides a limited waiver of the Government's sovereign immunity from suit by allowing a Plaintiff to recover damages in a civil action for personal injuries caused by the "negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). This waiver of immunity, however, is subject to exceptions. See 28 U.S.C. § 2680 (providing exceptions to the provisions of the Tort Claims Procedure statutes and to § 1346(b)'s waiver of sovereign immunity). The most important of these is the "discretionary

function exception." See McMellon v. United States, 387 F.3d 329, 335 (4th Cir.2004) ( en banc ) (describing § 2680(a)'s exception as "the most important"). The discretionary function exception to the Government's waiver of immunity for tort claims provides that the United States is not liable for "[a]ny claim ... based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of the federal agency or an employee of the Government." 28 U.S.C. § 2680(a). The discretionary function exception preserves sovereign immunity even if the Government was negligent, see Blakey v. U.S.S. Iowa, 991 F.2d 148, 152 (4th Cir.1993), and even if the government employee abused his or her discretion. 28 U.S.C. § 2680(a). If the discretionary function exception applies, then the claim is outside the limited waiver of immunity created by the FTCA and the district court is without subject matter jurisdiction to adjudicate it. See Medina v. United States, 259 F.3d 220, 223-24 (4th Cir.2001) (finding statutory exceptions to the FTCA's waiver of immunity to be jurisdictional).

In United States v. Gaubert, 499 U.S. 315, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991), the Supreme Court articulated a two-part test for determining whether the discretionary function exception applies. First, the "exception covers only acts that are discretionary in nature, acts that 'involv [e] an element of judgment or choice.' " Gaubert, 499 U.S. at 322, 111 S.Ct. 1267 (quoting Berkovitz v. United States, 486 U.S. 531, 536, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988)). If the action is not a matter of choice for the acting employee, the discretionary function exception will not apply. Berkovitz, 486 U.S. at 536, 108 S.Ct. 1954. The exception is not applicable "when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." Id.

Secondly, if the conduct does involve discretionary judgment, the court must then decide "

'whether that judgment is of the kind that the discretionary function exception was designed to shield.' " Gaubert, 499 U.S. at 322-23, 111 S.Ct. 1267 (quoting Berkovitz, 486 U.S. at 536, 108 S.Ct. 1954). "Because the purpose of the exception is to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort, when properly construed, the exception protects only governmental actions and decisions based on considerations of public policy." Gaubert, 499 U.S. at 323, 111 S.Ct. 1267 (internal citations and quotation marks omitted).

In support of its argument that Plaintiff's FTCA claim is barred by the discretionary function exception, the Defendant offers the supplemental Declaration of Warden Drew as well as Program Statement 6060.08 as exhibits. Drew declares that she reaffirms her prior statements in her previous declaration dated April 28, 2010. Further, Drew asserts that "Program Statement 6060.08 provides that staff are required to 'directly supervise the giving of the urine sample.' Program Statement 6060.08 as codified at 28 C.F.R. 550.31(a). To eliminate the possibility of diluted or adulterated samples, staff shall keep the inmate under direct visual supervision during this two-hour period, or until a complete sample is furnished." (Defendant's Exhibit #4, Drew's supplemental declaration). Drew declares the written policy allows staff to use their best judgment in determining how to supervise an inmate during the urine collection process. Id. While the policy does not specify whether an inmate is to be allowed to stand or sit, it applies uniformly to both male and female inmates, who assume different positions when urinating. Id. The standard position for urination for males, absent a medical condition, is standing. Id. In this case, Drew declares that the collections staff used their best judgment to determine that inmate Moore should be required to stand while providing the sample on July 6, 2008, so that they could supervise the entire collection process and

to ensure that the sample was not adulterated or diluted in any way. Id. Plaintiff had a history of attempting to adulterate samples in the past, having been caught putting toilet water in a sample on March 8, 2008. Id. Furthermore, Drew declares Plaintiff had no known medical condition that would prevent him from being able to provide a urine sample while standing under visual supervision as he had provided several samples in that manner in the past. Id. Drew asserts that there is no medical evidence that Plaintiff defecating on himself while providing the urine sample was involuntary. Id.

In this case, the BOP's urine surveillance program set forth in 28 C.F.R. 550.30, 550.31, and Program Statement 6060.08 provided for administrative guidance on the subject of inmate urine surveillance program. The staff are required to keep the inmate under direct visual supervision during the two-hour period or until a complete sample is furnished. Id. Therefore, while the program/policy states direct visual supervision, it does not further specify how to supervise the inmate during the urine collection. ( Drew declaration). Specifically, the policy does not specify whether an inmate is to sit or stand, during the collection process. Since males usually stand to urinate, Plaintiff had a history of attempting to adulterate his urine sample in the past by putting toilet water in the sample, and the fact that Plaintiff had no known medical condition that would prevent him from being able to provide a urine sample while standing under direct visual supervision, the urine collection staff used their judgment to determine Plaintiff should stand to give the sample on July 6, 2008. (Drew's supplemental declaration). Discretionary acts deserving of immunity are not limited to policymaking or planning decisions; day-to-day management can also involve discretionary choices grounded in regulatory policy. Gaubert, 499 U.S. at 325. The day-to-day operational decisions of government are entitled to immunity under the FTCA so long as the choices are "susceptible to policy analysis." Id. Therefore, as the policy only requires "direct visual

supervision,"there is no mandatory or recommended procedure on how an employee supervises an inmate during the urine collection process. Thus, the BOP employees are permitted to use their discretion in how to carry out the policy on supervision of the urine collection process. As such, the Defendant has met the first prong of the discretionary function exception to the FTCA.

As previously discussed, the second prong of the discretionary function test is that the challenged conduct must implicate considerations of public policy. Gaubert, 499 U.S. at 322-323. The second prong exists because the very purpose of the discretionary function exception is to prevent judicial "second guessing" of administrative decisions in social and political policy. Id. The Gaubert court stated:

> When established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion. For a complaint to survive a motion to dismiss, it must allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime. The focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis.

Gaubert, 499 U.S. at 324-325.

In this action, the goals of taking urine samples are related to considerations of public policy outlined in Program Statement 6060.08 which includes program objectives of deterring the use of illegal drugs by inmates so that the inmates will live in a safe and orderly environment, and the public will be protected from undue risk from inmates in community activities. (Exhibit #3, p. 2). Therefore, the Defendant's discretion in achieving these objectives of the Urine Surveillance and

Narcotic Identification Policy is related to day-to-day decisions and operation of the prison and inmate prison security. Therefore, Defendant has met both prongs of the discretionary function exception test under Gaubert. As the challenged action involved the exercise of discretion in furtherance of public policy goals, the claims against Defendant are barred by the discretionary function exception of the FTCA. Accordingly, it is recommended that Defendant United States of America's motion for summary judgment be granted.[1]

**Plaintiff's Motion to Amend**

On May 9, 2011, Plaintiff filed a motion to amend his complaint. (Doc. #75). Defendant United States filed a response in opposition. (Doc. #76). If the court adopts this report and recommendation, it is recommended that Plaintiff's motion to amend be denied. A scheduling order was entered by this court on May 18, 2010, with a deadline to amend the pleadings of June 18, 2010. Plaintiff's motion to amend was filed outside of the court's scheduling order. When seeking to amend a pleading after an applicable deadline in a scheduling order, a party must satisfy the good cause standard of Rule 16(b), Fed.R.Civ.P., before addressing the merits of a motion to amend under Rule 15(a), Fed.R.Civ.P. Nourison Rug Corp. v. Parvizian, 535 F.3d 295, 298 (4th Cir. 2008); Dilmar Oil Co., Inc. v. Federated Mt. Ins. Co., 986 F.Supp. 959, 980 (D.S.C. 1997). Plaintiff fails to show good cause. Furthermore, even assuming compliance with Rule 16(b), Plaintiff's motion should be denied under Rule 15. In response to Defendant's first motion to dismiss/summary judgment, Plaintiff filed his first request to amend his complaint which was granted on April 19, 2010. Defendant now has filed its second motion to dismiss/summary judgment. Instead of responding to the merits of

---

[1] In the alternative, it is recommended that this action be dismissed pursuant to Rule 41b of the Federal Rules of Civil Procedure.

Defendant's motion as ordered by the court, Plaintiff again files a motion to amend. The motion is filed outside the scheduling order deadline and almost two years after the commencement of this action. The prejudice to the Defendant along with Plaintiff's lack of diligence counsels against allowing an amendment under Rule 15. Therefore, Plaintiff's motion for leave to file an amended complaint (doc. # 75) should be denied for this reason as well.

## V. CONCLUSION

For the reasons discussed above, it is recommended that Plaintiff's motion to amend (document # 75) be DENIED and Defendant United States' Motion for Summary Judgment (document # 67) be GRANTED.

Respectfully submitted,

s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

August 10, 2011
Florence, South Carolina

**The parties are directed to the important information in the attached Notice.**