IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

RECEIVED
USDC, CLERK, CHARLESTON, SC

2011 SEP 14  P 2: 36

| | |
|---|---|
| Timothy Moore, | Civil Action No.: 4:09-cv-2046-RMG |
| Plaintiff, | |
| vs. | **ORDER** |
| United States of America, | |
| Defendant. | |

Plaintiff Timothy Moore, an inmate at the Federal Correctional Institution in Bennettsville, South Carolina, asserts a civil rights action pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971). Plaintiff alleges Defendants violated his rights under the Eighth Amendment. Additionally, Plaintiff asserts a claim under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671 *et. seq.*

Specifically, Plaintiff alleges he was asked to give a sample for a drug urine analysis test on July 6, 2008. (Dkt. No. 38 at ¶ 8). Plaintiff informed the corrections officers he was unable to provide a urine sample while standing without defecating due to a recently acquired medical problem and requested permission to provide the sample while seated on the toilet. *Id.* at ¶ 9. Plaintiff's request was refused and he was ordered to provide the sample while standing or risk placement in the Special Housing Unit. *Id.* at ¶ 15. Plaintiff alleges he complied and defecated on himself. *Id.* Plaintiff alleges that three officers present at the event laughed at the Plaintiff and called him "a shitty nigger." *Id.* at ¶ 16. Plaintiff alleges he suffered psychological injury and humiliation as a result of Defendant's alleged actions. ¶¶ 20, 26.

1

## PROCEDURAL HISTORY

Plaintiff filed his original complaint on August 5, 2009. (Dkt. No. 1). On January 18, 2011, United States Magistrate Judge Thomas E. Rogers, III, recommended the Defendants' motion to dismiss or, in the alternative, motion for summary judgment be granted in part and denied in part. (Dkt. No. 57). On February 9, 2011, the undersigned entered an order granting Defendants' motion to dismiss or, in the alternative, for summary judgment in part and dismissing all of Plaintiff's claims save his Federal Tort Claims Act (FTCA) cause of action against the United States. (Dkt. No. 61). The Defendants' motion was denied without prejudice with leave to re-file after the completion of discovery. Plaintiff was given thirty (30) days to conduct discovery and the Defendant was granted leave to re-file its motion fifteen (15) days after the close of discovery.

On March 15, 2011, the Defendant re-filed its motion to dismiss or, in the alternative, motion for summary judgment. (Dkt. No. 67). At this time, as Plaintiff was proceeding *pro se*, he was warned pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to a motion to dismiss or summary judgment could result in the dismissal of his claims. (Dkt. No. 68).

Plaintiff filed a motion for extension of time to complete discovery on March 31, 2011. (Dkt. No. 70). On April 21, 2011, the Magistrate Judge denied Plaintiff's motion for extension of time and advised Plaintiff he had until May 2, 2011 to file a response to Defendant's motion to dismiss or Plaintiff's case would be dismissed pursuant to Federal Rule of Civil Procedure 41(b). (*See* Dkt. No. 72). Plaintiff failed to file a response to Defendant's motion and instead filed a motion to amend his complaint. (Dkt. No. 75).

2

In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2)(d)(D.S.C.), Plaintiff's motion to amend the complaint (Dkt. No. 75) and Defendant's motion to dismiss (Dkt. No. 67) were referred to the United States Magistrate Judge. The Magistrate Judge has issued a Report and Recommendation that Plaintiff's motion to amend be denied and Defendant's motion for summary judgment be granted[1]. (Dkt. No. 79).

Both parties were advised by the Magistrate Judge of the procedures and requirements for filing objections to the Report and Recommendation and the serious consequences of failing to do so. Plaintiff has failed to object to the Report and Recommendation. As explained herein, this Court has reviewed the Record for any errors of law, agrees with the Magistrate Judge's Report and Recommendation, and therefore denies the Plaintiff's motion to amend and grants the Defendant's motion for summary judgment.

## LAW/ANALYSIS

The Magistrate Judge only makes recommendations to this Court. The recommendations of the Magistrate Judge have no presumptive weight and the responsibility for making a final determination remains with this Court. *Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The court is charged with making a *de novo* determination of those portions of the Report and Recommendation to which specific objection is made. Additionally, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1). The Court may also "receive further evidence or recommit the matter to the magistrate with instructions." *Id.* In the absence of specific objections to the Report and Recommendation, the Court is not required to give any explanation for adopting the recommendation. *Camby v. Davis*, 718 F.2d 198, 200 (4th Cir. 1983).

---

[1] In the alternative, the Magistrate Judge recommended that the action be dismissed pursuant to Rule 41(b) of the Federal Rules of Civil Procedure.

## I.   Federal Tort Claims Act

Plaintiff asserts his claim under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 *et. seq.*, alleging that Defendant was negligent in the performance of the BOP's employees' duty to collect his urine specimen for drug testing purposes because they failed to take into consideration Plaintiff's assertion that, due to a medical problem, he could not urinate without also defecating. In response, the Defendant argues the court lacks subject matter jurisdiction over the FTCA claim due to the FTCA's discretionary function exception.

The FTCA provides a limited waiver of the Government's sovereign immunity from suit by allowing a Plaintiff to recover damages in a civil action for personal injuries caused by the "negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant . . . ." 28 U.S.C. § 1346(b)(1). Nevertheless, the FTCA's waiver of immunity is subject to certain exceptions. *See* 28 U.S.C. § 2680.

The most notable of these exceptions is the "discretionary function exception." Pursuant to the discretionary function exception, the United States is not liable for "[a]ny claim based upon . . . the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). The discretionary function exception preserves sovereign immunity even if the Government was negligent, *see Blakey v. U.S.S. Iowa*, 991 F.2d 148, 152 (4th Cir. 1993), and even if the government employee abused his or her discretion. 28 U.S.C. § 2680(a). If the discretionary function exception applies, then the claim is outside the limited waiver of immunity created by the FTCA and the district court is without subject matter jurisdiction to adjudicate it. *Medina v. United States*, 259 F.3d 220, 223-

224 (4th Cir. 2001)(finding statutory exceptions to the FTCA's waiver of immunity to be jurisdictional).

In *United States v. Gaubert*, the Supreme Court articulated a two-part test for determining when the discretionary function exception applies. *Gaubert*, 499 U.S. 315 (1991). First, the "exception covers only acts that are discretionary in nature, acts that 'involv[e] an element of judgment or choice.'" *Id.* at 322 (quoting *Berkovitz v. United States*, 486 U.S. 531, 536 (1988)). In other words, if the employee has a choice in the manner of performance, the discretionary function exception will apply. *See also Berkovitz*, 486 U.S. at 536 ("[T]he discretionary function exception will not apply when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow. In this event, the employee has no rightful option but to adhere to the directive.").

Second, if the alleged conduct involves discretionary judgment, the Court must determine "whether that judgment is of the kind that the discretionary function exception was designed to shield." *Gaubert*, 499 U.S. at 322-23 (internal quotation marks omitted). "Because the purpose of the exception is to prevent judicial second-guessing of the legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort, when properly construed, the exception protects only governmental actions and decisions based on considerations of public policy." *Gaubert*, 499 U.S. at 323 (internal citations and quotation marks omitted).

Defendant has provided exhibits—including the supplemental Declaration of Warden Drew and Program Statement 6060.08— to support its position that the discretionary function exception applies. The collection of urine samples from federal inmates for drug testing

5

purposes is governed by Program Statement 6060.08, codified at 28 C.F.R. 550.31(a) which states:

> Staff of the same sex as the inmate tested shall directly supervise the giving of the urine sample. If an inmate is unwilling to provide a urine sample within two hours of a request for it, staff ordinarily shall file an incident report . . . . To eliminate the possibility of diluted or adulterated samples, staff shall keep the inmate under direct visual supervision during this two-hour period, or until a complete sample is furnished . . . .

The policy does not state that inmates are required to sit or stand as the policy applies to both male and female inmates. According to Warden Drew's supplemental declaration, "For males, the standard position for urination, absent a medical condition, is standing. This allows staff to supervise the entire collection process and to ensure that the sample is not adulterated or diluted in any way." (Dkt. No. 67-4, at ¶ 3).

Additionally, while staff are required to keep the inmate under direct visual supervision, the policy does not specify *how* staff should supervise the inmate during the collection. Therefore, BOP employees are allowed to use their discretion as to exactly how to supervise an inmate providing a sample. *See* Dkt. No. 67-4 at ¶ 3 ("The written policy allows staff to use their best correctional judgment in determining how to supervise an inmate during the urine collection process."). Plaintiff had a history of attempting to adulterate his urine sample in the past by putting toilet water in the sample, and Plaintiff had no known medical condition that would prevent him from being able to provide a urine sample while standing under direct visual supervision (Dkt. No. 67-4 at ¶ 5). Discretionary acts deserving of immunity are not limited to policymaking or planning decisions; day-to-day management can also involve discretionary choices grounded in regulatory policy, so long as these choices are "susceptible to policy analysis." Gaubert, 499 U.S. at 325. Since BOP employees are allowed discretion in how they

carry out the policy on supervision of the urine collection process, the Defendant has met the first prong of the discretionary function exception.

The second prong of the discretionary function exception test is also met in this case as the challenged conduct is directly related to public policy considerations. *See Gaubert*, 499 U.S. at 323 ("[W]hen properly construed, the exception protects only governmental actions and decisions based on considerations of public policy.") Program Statement 6060.08 clearly states the public policy considerations of the drug testing program: (a) deterring the use of illegal drugs by inmates, (b) insuring a safe and orderly environment for inmates to live in, and (c) protecting the public from undue risk from inmates involved in community activities. (Dkt. 67-3 at ¶ 3).

As the Defendant's challenged actions have met both prongs of the discretionary function exception, the Plaintiff's claims are barred and the Defendant's motion for summary judgment is granted.

## II.     Plaintiff's Motion to Amend the Complaint

When Defendant re-filed its motion to dismiss on March 25, 2011, Plaintiff was warned pursuant to *Roseboro* of the dangers of dismissal should he fail to respond to the Defendant's motion. Instead of responding, Plaintiff filed a motion for extension of time to complete discovery, which was denied by the Magistrate Judge who again warned Plaintiff he had until May 2, 2011 to respond to the Defendant's motion. (*See* Dkt. No. 72, page 2, n. 1). Despite these repeated warnings, Plaintiff never responded to Defendant's motion and instead filed a motion to amend his complaint. (Dkt. No. 75).

Pursuant to Federal Rule of Civil Procedure 16(b)(4), after a scheduling order has been entered, the "schedule may be modified only for good cause and with the judge's consent." FED. R. CIV. P. 16(b)(4). The Fourth Circuit has noted that "after the deadlines provided by a

7

scheduling order have passed, the good cause standard must be satisfied to justify leave to amend the pleadings." *Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298 (4th Cir. 2008). In the case at bar, the Plaintiff has failed to show good cause to amend his complaint.

As the Magistrate Judge notes, even assuming compliance with Rule 16(b), Plaintiff's motion should be denied under Rule 15(a). Plaintiff's motion to amend falls well outside the time limits for amending and supplementing pleading set forth in Federal Rule of Civil Procedure 15. *See* FED. R. CIV. P. 15(a). This filing is Plaintiff's second motion to amend his complaint and it comes almost two years after the commencement of this action. Not only would such an amendment prejudice the Defendant, but Plaintiff's lack of diligence counsels against permitting the amendment under Rule 15. As such, Plaintiff's motion for leave to file an amended complaint is therefore denied.

## CONCLUSION

The Court, after a thorough review of the Report and Recommendation of the Magistrate Judge and the relevant case law, finds the Magistrate applied sound legal principles to the facts of this case. Therefore, this Court adopts the Magistrate Judge's Report and Recommendation as the Order of this Court. The Plaintiff's Motion to Amend (Dkt. No. 75) is **DENIED** and the Defendant's Motion for Summary Judgment (Dkt. No. 67) is **GRANTED**.

**AND IT IS SO ORDERED.**

Richard Mark Gergel
United States District Court Judge

September 14, 2011
Charleston, South Carolina

8